J. L. Turner Company v.
The General State Authority

*Robert R. Rice, McNees, Wallace & Nurick,* for plaintiff.

*Warren W. Holmes and Michael W. Madar,* for Commonwealth.

BOWMAN, J., September 6, 1966.—A dispute having arisen between J. L. Turner Company (Turner) and the General State Authority (Authority) under a contract between these parties providing for certain construction work to be performed by Turner, the matter was submitted to arbitration as provided for in the contract. Dissatisfied with the arbitration award, Turner filed a motion in this court to vacate or modify the award. The authority then countered with a petition to dismiss Turner's motion for want of jurisdiction of the court to entertain it.

In providing for arbitration of disputes, the contract in question also provided that any such award should be final, binding and conclusive and without right of review. It made no reference to the Act of April 25, 1927, P. L. 381, 5 PS §161.[1]

---

[1] Commonly referred to as the Arbitration Act of 1927. It will be so denominated in this opinion.

If the arbitration provisions of this contract constitute common law arbitration, the authority's petition to dismiss Turner's motion must be granted, as by common law, contracting parties are bound by provisions making an arbitration award final and not subject to review, subject only to certain exceptions not here relevant: Wingate Construction Company v. Schweizer Dipple, Inc., 419 Pa. 74 (1965); John A. Robbins Company, Inc. v. Airportels, Inc., 418 Pa. 257 (1965).

If, however, the provisions of the contract itself bring it within the scope of the Arbitration Act of 1927, the authority's petition to dismiss Turner's motion must be denied, as the provisions of this act permit court review of arbitration awards notwithstanding contract provisions to the contrary in those instances where the act specifically provides for such review. (Cases cited supra).

It is acknowledged that the contract in question makes no reference to the Arbitration Act of 1927, and neither party contends that it was impliedly incorporated into the contract nor invoked by subsequent agreement or action of the parties. Therefore, there remains only the single question of whether section 16 of said act brings the provisions of the act into the contract as a matter of law.

Section 16 of the act provides:

"The provisions of this act shall apply to any written contract to which the Commonwealth of Pennsylvania, *or any agency or subdivision thereof*, or any municipal corporation or political division of the Commonwealth shall be a party". (Italics supplied).

That the provisions of the Arbitration Act of 1927 are, as a matter of law, incorporated into all contracts to which a "public body" is a party has been clearly settled by a series of decisions of the Supreme Court. In Philadelphia Housing Authority v. Turner Con-

struction Company, 343 Pa. 512 (1942), the court sustained a judicial review of an arbitration award rendered under a contract which provided that such an award should be conclusive, and in which no reference was made to the Arbitration Act of 1927. It held that section 16 of said act is "mandatory and applies the provisions of the act of which it is a part to any written contract to which the Commonwealth or any agency thereof is a party". It concluded that, inasmuch as the Housing Authorities Law [2] declared those created under it to be agencies of the Commonwealth, the Philadelphia Housing Authority was a public body within the meaning of section 16 of the act.

In Seaboard Surety Company v. Commonwealth, 345 Pa. 147 (1942), the Philadelphia Housing Authority decision was followed, and it was further held that neither party to such a public contract can waive any part of the statute, both being bound by its provisions in their entirety.[3]

This leaves for determination only the question of whether the General State Authority is an "agency or subdivision" of the Commonwealth within the meaning of section 16 of the Arbitration Act of 1927.

The General State Authority Act of March 31, 1949, P. L. 372, 71 PS §1707.1, declares the authority to be "created a body corporate and politic, constituting a public corporation and governmental instrumentality": (section 3), and in so operating to be "performing essential governmental functions": (section 15). While the credit and taxing power of the Commonwealth or its political subdivisions may not be pledged by the authority in financing its operations, it is afforded the power of eminent domain, it may sue and be sued and enter into contracts: (section 4).

---

[2] Act of May 28, 1937, P. L. 955, 35 PS §1550.

[3] Also see Acchione v. Commonwealth, 347 Pa. 562 (1943) ; John A. Robbins Company, Inc. v. Airportels, Inc., supra.

Having been so created, and having entered into a contract with Turner for the fulfillment of the essential governmental functions of supplying educational facilities at one of the State-maintained colleges, is the authority an agency of the State within the meaning of said act? While this narrow question has never been specifically resolved, we have no hesitancy in declaring the authority to be subject to said act.

In the recent case of Roney v. General State Authority, 413 Pa. 218 (1964), it was held that the authority, as an instrumentality of the Commonwealth engaged in a governmental function, is immune from liability for the negligence of its employes. In so holding, our Supreme Court relied on Rader v. Pennsylvania Turnpike Commission, 407 Pa. 609 (1962), which reached the same conclusion as applicable to the Pennsylvania Turnpike Commission created under a statute [4] which, with minor insignificant differences, is very similar to the Act of 1949 creating the General State Authority. In so concluding, the court stated "that the Turnpike Commission is in many respects the alter ego of the Commonwealth". Similarly, in Anderson Appeal, 408 Pa. 179 (1962), it was determined that the Delaware River Port Authority, created by compact authorized by the Act of June 12, 1931, P. L. 575, as amended, in carrying on an essential governmental function, was immune from liability for consequential damages resulting from its activities where no taking was involved. In so concluding, the court said, at page 182:

"A study of the enabling and governing statutes reveals that Authority is not a mere public corporation, but, rather, was intended to be and has always been *an agency of the Commonwealth of Pennsylvania* carrying out an executive function and hence immune

---

[4] Act of May 21, 1937, P. L. 774, 36 PS §652d.

from the payment of consequential damages". (Italics supplied).

Quite similar to the present case is that of Adam Eidemiller, Inc. v. State Highway and Bridge Authority, 408 Pa. 195 (1962). In that case, the authority there in question was held subject to the jurisdiction of the Board of Arbitration of Claims under the Act of May 20, 1937, P. L. 728, 72 PS §4651-1, which refers only to arbitration of claims against the "Commonwealth" arising from contracts entered into "by" or "with" the State. The court said, at pages 200-01:

"The conclusion is inescapable that in performing its delegated functions in accordance with the Act of 1949, Authority stands in the place of and acts in the name of and for the Commonwealth. *It is not only a creature of the Commonwealth but acts as its arm and agent in carrying out its duties.* Accordingly, it is entitled to avail itself of privileges granted the Commonwealth and is subject to the same responsibilities. In establishing Authority with its intimate interrelationship with Department, the legislature clearly intended that it was to come within the meaning of the 'Commonwealth' as used in the Act of 1937 (72 PS §§4651-1, 4651-4) and to be subject to the jurisdiction of Board". (Italics supplied.)

In the course of this opinion, the Supreme Court, in commenting upon its prior decisions in Anderson and Rader, said, at page 199:

"In both cases, the decisional point was relationship *of these agencies to the Commonwealth.* In each, we determined that in performing the functions at issue in the litigation, these agencies were in essence the 'alter ego' of the Commonwealth. The same principle is equally applicable here". (Italics supplied).

We reiterate the comment of our Supreme Court— the same principle is applicable here.

Apparently, the authority would have us conclude

that inasmuch as the word "agency" is not employed in the statute creating it or describing its characteristics, we cannot find it to be an agency of the Commonwealth within the meaning of section 16 of the Arbitration Act of 1927. We cannot apply such a technical or restrictive meaning to the use of this word in the statute. Rather, we believe, it was intended to be employed in its general or generic sense and, as such, is synonymous with an instrumentality of the Commonwealth, as this latter word is in fact employed in the statute creating the authority. In the technical administrative structure of the executive branch of the State government, the nomenclature employed speaks in terms of departments, boards, commissions, bureaus and offices. While it is possible that the word "agency" may appear in some obscure statute on that subject, it is not generally employed as a definitive classification of subdivisions of State government. If the authority's contention were adopted, it would, by definition, exclude from the jurisdiction of the act all but the Commonwealth itself and render the word "agency", as employed in the statute, practically meaningless.

In performing the function out of which this controversy arose, the authority was and is engaged in an essential governmental function and, in doing so, is an agency of the Commonwealth within the meaning of section 16 of the Arbitration Act of 1927.

Finally, Turner urges us to consider the substantive merits of its motion to strike off or modify the arbitration award from which it has appealed to this court. Because of the procedural posture of this case, we cannot do so. While both parties devoted considerable time in their arguments and in their briefs to the substantive issue, the fact remains that at this point in the procedure, the authority has not answered Turner's motion. In filing its petition to dismiss Turner's

motion, the authority, while admitting all well-pleaded facts in Turner's motion for the limited purpose of disposing of its petition, has done no more than that. In dismissing the petition of the authority, we must afford it an opportunity to answer the averments of Turner's motion to determine what facts are admitted or denied as to the substantive issue. Until the authority is afforded an opportunity to do so, we cannot proceed.

For the foregoing reasons, we enter the following

ORDER

And now, September 6, 1966, the petition of the General State Authority to dismiss and discharge the motion of J. L. Turner Company to vacate or modify the arbitration award is hereby denied and the petition is dismissed. The General State Authority may answer the motion of J. L. Turner Company within 20 days of this order.